UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:25-CR-384-JAR/PLC |
| | ) |
| VAN N. NGUYEN, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES OF AMERICA'S MOTION
FOR PRETRIAL DETENTION AND HEARING**

Comes now the United States of America, by and through its attorneys, Matthew T. Drake, Acting United States Attorney for the Eastern District of Missouri, and Jonathan A. Clow, Assistant United States Attorney for said District, and respectfully moves the Court to order Defendant Van N. Nguyen ("Nguyen") detained pending trial and requests a detention hearing be held within three days of Defendant's initial appearance, pursuant to Title 18, United States Code, Section 3142(f)(2). In support of this Motion, the Government states as follows:

**Introduction**

1.  The Indictment in this case stems from Defendant's months-long harassment and attempted extortion of victim H.C. Since at least February 2025, Defendant has demanded hundreds of thousands of dollars from H.C. while claiming to work for the Internal Revenue Service and threatening to imprison H.C. and his family if H.C. does not comply with his demands. Despite law enforcement intervention, Defendant has repeatedly harassed H.C. at his home and workplace, delivering threatening messages demanding payment. All the while, Defendant has posted on social media threatening and at times non-sensical messages directed at H.C. and witnesses in this case. For these reasons, Defendant presents a serious risk of obstruction, and a

clear danger to H.C., the government's witnesses, and the broader community, and the United States respectfully asks the Court to detain Defendant pending trial.

## Relevant Law

2.      Under the Bail Reform Act, a defendant must be detained where—as here—two conditions are met: (1) the case involves a serious risk that defendant will obstruct justice, and (2) no conditions can reasonably assure the defendant's appearance or the safety of the community. *See* 18 U.S.C. § 3142(f)(2) ("The judicial officer shall hold a [detention] hearing . . . in a case that involves—(B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."); 18 U.S.C. § 3142(e)(1) (the "judicial officer shall order the detention of the person . . . [i]f, after a [detention] hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community").

3.      As the Eighth Circuit has made clear, in determining whether these two conditions are met, this Court need not conduct a "rigid two-step inquiry." *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). Rather, this Court "permissibly conduct[s] the two inquiries in a single detention hearing," in part, because "the two inquires, while not identical, substantially overlap." *Id.* For instance, the Eighth Circuit has recognized that "the § 3142(g) factors . . . are relevant both to determining whether [the] Defendant presents a serious risk of flight and [whether] there are conditions of release that will reasonably assure Defendant's appearance." *Id.* (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)). Those factors include "the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the

history and characteristics of the defendant, and the nature and seriousness of the danger posed by the defendant's release." 18 U.S.C. § 3142(g).

## Background

4. Defendant's harassment of H.C. stems from a dispute between H.C. and H.C.'s former girlfriend, D.D. At the time Defendant's harassment began, Defendant was dating D.D., and H.C. and D.D. were in the process of partitioning assets they jointly owned, including H.C.'s house. Defendant, claiming to be D.D.'s representative, has demanded that H.C. pay hundreds of thousands of dollars in purported credit card, personal loan, and tax debt in D.D.'s name for which Defendant claims H.C. is responsible.

5. In order to threaten H.C. into repaying this supposed debt, Defendant has falsely claimed to work for the IRS (and other federal agencies), asserted he is assisting the IRS with a non-existent investigation into H.C., and has threatened to put H.C. in jail. Defendant is now charged with impersonating an employee of the United States, in violation of Title 18, United States Code, Section 912, in connection with using this false persona of an IRS employee in order to obtain records relating to H.C.'s personal firearms.

## Argument

6. Based on Defendant's conduct for the past several months, as described below, there is a serious risk that Defendant will attempt to threaten, injure, or intimidate witnesses if not detained pending trial, and there is no condition or combination of conditions that will reasonably assure his appearance and the safety of the community if he were released. In short, Defendant has engaged in an intimidation campaign against H.C. and the government's witnesses in this case. Defendant's threats and harassment have continued unabated despite the involvement of law enforcement, demonstrating that no conditions will dissuade Defendant from continuing—or

worse, escalating—this intimidation if he were released on bond. Consequently, he should be detained.

    **A. Defendant's persistent and escalating harassment, intimidation, and threats of H.C. demonstrate that he will continue to harass, intimidate, and threaten H.C. if released on bond and that he poses a danger to H.C. and the broader community.**

    7.    Defendant's harassment and intimidation of H.C. began no later than February of this year. In addition to sending emails and text messages demanding money, Defendant has harassed H.C. in person, particularly at his home. Multiple times, Defendant has shown up at H.C.'s residence unannounced and attempted to enter the home without permission, often under the guise of retrieving D.D.'s belongings. More recently, Defendant has claimed to own H.C.'s home (through D.D.) and has insisted on accessing the house. Defendant has gone so far as to attempt to break into the home in broad daylight, using a toolbox and screwdriver. Defendant has also harassed H.C. at his business, storming into the workplace and aggressively shouting demands. All the while, Defendant has left H.C. unsolicited letters, often accusing H.C. of committing fraud, demanding money, and threatening H.C. and his family, examples of which are below:

> ▮▮▮▮ this your last fucking chance. You pick up the phone call me we make a deal. Return what you took. I swear I will put you, ▮▮▮▮, ▮▮▮▮, and ▮▮▮▮ is jail for ERC Fraud, Child Support Fraud. You kids will grow up in a foster home. Give this your attorney I dare you. I dont know what losing is. If your wifes calls girlfriends shop one more time talking shit. Im going take every with the court system, then i will put your ass in jail. DO YOU UNDERSTAND. MOTHER FUCKER.



8.      With these demand letters, Defendant has also left various tax and financial documents belonging to H.C.  Ostensibly, Defendant's purpose in leaving such documents has been to demonstrate to H.C. that Defendant has his personal information and access to his bank accounts, all without H.C.'s knowledge and authorization.  In other words, the documents appear designed to further harass and intimidate H.C. into complying with Defendant's demands for money.

9.      Defendant's harassment of H.C. has continued for months despite the involvement of law enforcement.  In late February, St. Charles City Police were called to H.C.'s home multiple times based on Defendant's trespassing on the property, resulting in Defendant's arrest. Defendant's harassment eventually became so severe that H.C. sought an order of protection against Defendant in March 2025.  *See Petitioner v. Nguyen*, Case No. 2511-PN00277 (St. Charles

County, Missouri Circuit Court). Defendant's harassment has nonetheless continued, demonstrating that no conditions will stop it going forward.

**B. Defendant's impersonation of an IRS employee in order to extort H.C. further underscores the danger he poses to H.C. and the community.**

10. In his efforts to extort H.C., Defendant has repeatedly and falsely told H.C. and others that he is an IRS employee. When demanding money from H.C., Defendant has warned H.C., including in text messages, that he works for the IRS—implying that Defendant can get H.C. into legal trouble through his position and specifically threatening to put H.C. and his family members in jail for fraud. In order to convince H.C. of his officialdom, Defendant has provided H.C. with a fictitious IRS employee identification number.

11. As charged in the Indictment, Defendant used this false persona of an IRS employee in an attempt to obtain records related to firearms owned by H.C. Seemingly from reviewing H.C.'s bank accounts, Defendant learned that H.C. had purchased firearms from a local gun store in St. Charles, Missouri. In May of this year, Defendant went to that store and demanded records related to H.C.'s firearms purchases. During a conversation with the store owner, F.B., Defendant falsely claimed that he was investigating Defendant and repeatedly told the owner he worked for the IRS, all to pressure the owner into giving him H.C.'s purchase records. Eventually, after the owner refused to turn over the records without a subpoena or court order, Defendant snapped and started yelling, before leaving emptyhanded.

12. Not only is the evidence of Defendant's guilt overwhelming, his impersonation of a federal employee at this store speaks to the danger he poses to H.C. and others. Particularly given his ongoing harassment of H.C. and insistence on accessing H.C.'s home, the United States is concerned about Defendant's motivation for learning what firearms were owned by H.C.—for

6

example, if Defendant wanted to know what resistance he would be met with if he broke into H.C.'s home or if he turned his threatening behavior into action.

    **C. Defendant's online harassment further demonstrates that he will harass, intimidate, and threaten government witnesses if released on bond and that he poses a danger to these witnesses and the broader community.**

    13.    Over the course of the past few months, Defendant has also made numerous posts to his Facebook account harassing and threatening H.C. and multiple witnesses to his harassment, including the owner of the St. Charles gun store.  Defendant has directed multiple posts to H.C., tagging the Facebook account for H.C.'s business, and threatening to put H.C. in jail.  In one such post (pictured below), Defendant posted a picture of an urn and told H.C., "this is what you will look like by the time youre out of prison."




7

14. Regarding H.C.'s home, Defendant has claimed on Facebook that the house belongs to him, that he "will shot [sic] any trespasser on or in my property," and that he has "bad aim, so I got a shotgun."



15. Since impersonating a federal employee at a gun store in St. Charles, Defendant has also made multiple threatening posts directed at the store and its owner, tagging the store's Facebook account in the posts. In one such post, Defendant appeared to reference the store owner's personal vehicle, in an apparent attempt to dox and intimidate the owner. In another, Defendant posted images from what appear to be H.C.'s bank statements showing purchases from the store.





16. Finally, Defendant has recently posted numerous troubling messages, seemingly referring to his belief that he is being followed or targeted by the St. Peters Police Department and other individuals. One such post (pictured below) alludes to Defendant's being the target of a hitman, implies he killed said hitman, and includes a photo of a rifle.




9



17. In summary, over the past several months, Defendant has demonstrated his unwavering commitment to harass and intimidate those who he believes wronged him—both directly and publicly over the internet. That intransigence, combined with recent concerning posts online alluding to violence and access to firearms, makes Defendant a real threat to the victim and government witnesses in this case. The United States believes Defendant will continue to harass and intimidate these individuals—or worse, he will retaliate against them—if he were released. As such, there are no conditions that will reasonably assure his appearance and the safety of the community, and Defendant should be detained pending trial.

**Conclusion**

WHEREFORE, the United States of America respectfully requests that this Court detain Defendant pending his trial in this matter.

        Respectfully submitted,

        MATTHEW T. DRAKE
        ACTING UNITED STATES ATTORNEY

        */s/ Jonathan A. Clow*
        JONATHAN A. CLOW
        ASSISTANT UNITED STATES ATTORNEY
        Thomas F. Eagleton Courthouse
        111 South Tenth Street, 20th Floor
        St. Louis, Missouri 63102
        (314) 539-2200